JOHN A. PARKINSON, Appellant, v. M. E. PARKINSON'S HEIRS et al., Appellees.

**REFORMATION OF INSTRUMENTS:** Proceedings and Relief— Laches—Knowledge of Mistake. Principle recognized that one is held to know that which, with reasonable diligence, and in the light of the attending circumstances, he might have discovered, and that long-continued delay in moving for the correction of a mistake may act as a bar to relief. So held where plaintiff claimed that the name of his wife was mistakenly inserted in a deed as a joint grantee, but delayed action until after the deed had been in his possession for 18 years.

*Appeal from Sioux District Court.*—WM. HUTCHINSON, Judge.

MONDAY, FEBRUARY 19, 1917.

SUIT in equity to quiet title to lands, and in effect to reform a deed by striking out the name of a grantee therein. The trial court refused relief, and the plaintiff has appealed. —*Affirmed.*

*R. H. Brown,* for appellant.

*Pascal & Pascal,* for appellees.

REFORMATION OF INSTRU-MENTS : pro-ceedings and relief : laches : knowledge of mistake.

EVANS, J.—The defendants in the case are heirs of M. E. Parkinson, the former wife of the plaintiff. The plaintiff and his wife were married in February, 1891, and the wife died 20 years later, in 1911. In July, 1891, the plaintiff and his wife purchased jointly a quarter section of land, known in the record as the Ballou quarter. The business pertaining to such purchase was done by the plaintiff himself, and the name of the wife was included in the deed as a joint grantee. In September, 1891, another quarter section was bought from one Iverson, and the deed thereto was also taken in the name of both hus-band and wife as grantees. This is known in the record as the Iverson quarter, and this deed is the one involved in this suit. It is the contention of the plaintiff that the inclusion of the name of his wife as one of the grantees was a mis-take of the scrivener who drew the deed, and that the plain-tiff never discovered the mistake until shortly before the bringing of this suit, in the year 1915. The defense is a general denial, and a plea of the statute of limitations. It is urged for the appellant that the evidence of mistake is undisputed and conclusive; and likewise, that the mistake was not discovered until 1915, and that the statute of lim-itations, therefore, was not set running.

The plaintiff is confronted with many difficulties in

the case. He was his own principal witness, and his testimony was all received subject to objection as to his competency, under Section 4604, Code, 1897. The evidence of mistake on the part of the plaintiff himself rests upon his testimony alone, corroborated, however, to some extent by other testimony. If there is any evidence in the record of the understanding of the wife as to her relation to such title, or of any mistake on her part or ignorance that her name was included, it must be found also in the testimony of the plaintiff. Subject to objection, the evidence of the plaintiff was taken fully, without any apparent attempt to avoid the inhibition of the statute. Nor does appellant's brief separate for us the competent from the incompetent evidence, and we are left to pick it out as best we may.

Disregarding the statute for the moment, and taking the testimony of the plaintiff as it was given, his claim is that the mistake of joining husband and wife as grantees was made by the scrivener, and was unknown both to himself and to his wife. Neither of them was actually present when the deed was made. The plaintiff was represented in the transaction by one Bunting, who has since died. The deed was actually written by one De Wolf. He testified that he put in both names because both names had been included in the Ballou deed. He never knew that it was a mistake to include both names in the deed until he was so informed by the plaintiff in 1915. The plaintiff contends that his wife's name was inserted as a grantee in the Ballou transaction because she contributed to the purchase money; that she did not contribute any purchase money to the Iverson transaction; that she had nothing to do with it, and never knew that her name was included; that the plaintiff exercised exclusive control of the land during the entire period of his ownership; that his possession was open and adverse to his wife; that he never discovered the mistake until 1915, when he undertook to renew a mortgage upon

the premises.  Treating all of plaintiff's evidence as com-
petent, he is confronted by many circumstances which tend
to negative it, both as to the question of mistake and as
to the question of discovery.  It goes without saying that,
in view of the long period of time elapsed since the alleged
mistake was made, and the fact that no question was raised
until after the death of the wife and until after the death
of Bunting, who had charge of the transaction, the court
must scrutinize the testimony of the plaintiff, and must
weigh it in the light of all the circumstances which are
made to appear.  The wife was a person of considerable
property when she married the plaintiff.  The plaintiff took
charge of her property, and managed it as her agent during
their entire married life.  Some sales were made for her and
rents collected annually on other property.  All of these
collections were made by the husband.  All money of both
husband and wife went into one fund, out of which fund
all expenditures were drawn.  There do not appear to
have been any separate accounts kept between them.  At the
time of their marriage, the plaintiff was the owner of sev-
eral hundred acres of land.  This had been acquired in part
with money borrowed from his father.  After their mar-
riage, the wife, at the request of her father-in-law, joined
with her husband in signing notes to him for borrowed
money.  The Iverson land was purchased subject to encum-
brance, and required an original investment of only $1,500.
The encumbrances appear to have been cleared, and a new
mortgage executed thereon.  It appears that, in 1894, the
husband and wife negotiated a loan upon said land and oth-
er lands for $5,000, the husband and wife joining in the
execution of both note and mortgage.  In 1909, a new mort-
gage of $10,000 was negotiated upon said premises, the hus-
band and wife joining again in both note and mortgage.
If we were to assume, therefore, that the plaintiff knew
that his wife was one of the grantees in the original deed,

the circumstances here indicated would be very suggestive in denial of any claim of mistake. The effect of these circumstances is avoided by the plaintiff by the claim that he had not discovered the fact that the title to one half the land was in his wife. On the question of the discovery of such fact, all that is incumbent upon the defendants is to show such facts and circumstances as ought to have resulted in discovery by the plaintiff. It appears that Bunting was a banker, and that the deed in question was kept in the bank with other papers of the plaintiff for about two years after its execution. Thereafter, it, with other papers, was removed from the bank by the plaintiff and kept by him in his own personal safe. Prior to this time, it had been duly filed for record by the act of Bunting. Not only was the deed recorded, whereby it gave notice to every other person in the world of its actual contents, but the original deed was in the hands of the plaintiff himself for the period of 18 years before his wife died. For the purpose of showing knowledge on the part of the plaintiff, what more effective thing could the defendants do than to show that the deed was in his hands for such period of time? Furthermore, abstracts of this land were procured for the purpose of the mortgages which have been already referred to. Presumably, these abstracts showed the true state of the title. At least there is no contention otherwise. These abstracts were of his own procurement and were within his own control, and their contents were presumptively known to him. In the face of such circumstances, which are of such a nature as to be conclusive against all the rest of the world, we do not think it ought to avail the plaintiff as a matter of fact to say that he alone of all the world did not know these vital facts.

Taking the evidence, therefore, as a whole, in all its circumstances, we do not think it can be said that it is of that clear and convincing character which would justify

at this time a correction of the deed on the ground of mistake. If, further, we were to eliminate from the record such evidence of the plaintiff as is inhibited under Section 4604, Code, 1897, it would leave the evidence in a still more unsatisfactory state.

We are satisfied, therefore, that the decree of the trial court must be—*Affirmed.*

GAYNOR, C. J., LADD and SALINGER, JJ., concur.